**MIDLANTIC NATIONAL BANK/NORTH,**
Plaintiff,

v.

**Jeffrey A. REIF, Defendant.**

**No. 88 CV 1934.**

United States District Court,
E.D. New York.

March 9, 1990.

---

Seth Natter, Natter & Natter, New York City, for plaintiff.

Jeffrey A. Reif, pro se.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Defendant/petitioner moves for an order vacating or, alternatively, modifying an income execution issued to satisfy a judgment entered by this Court. For the reasons set forth below, the motion is granted in part and denied in part.

### FACTS

On March 1, 1989, this Court entered a default judgment against petitioner Jeffrey Reif in the amount of $28,264.44. The underlying action involved petitioner's personal guaranty of a business equipment lease. Jurisdiction was based upon diversity of citizenship. 28 U.S.C. § 1332.

On September 28, 1989, plaintiff's attorney delivered an income execution to the Suffolk County Sheriff. N.Y.Civ.Prac.L. & R. 5231 (McKinney Supp.1990); Fed.R. Civ.P. 69. Pursuant to the income execution, the Sheriff directed petitioner's employer to withhold from each of petitioner's paychecks 10% of his gross income until the judgment was satisfied.

Pursuant to a previous matrimonial settlement, petitioner already makes voluntary maintenance and support payments of

$300 each week to his family. On an estimated gross salary of $600 a week, petitioner complains that the addition of a weekly income execution for another $60 threatens his ability to support his family. Petitioner, therefore, seeks to vacate or modify this income execution.

## DISCUSSION

■■■ New York permits the withholding of up to 10% of the judgment debtor's gross income under an income execution. N.Y.Civ.Prac.L. & R. 5231 (McKinney Supp.1990). Federal law, however, limits an income execution to 25% of a judgment debtor's disposable earnings. 15 U.S.C. § 1673; *see also* N.Y.Civ.Prac.L. & R. 5231(g) (McKinney Supp.1990). As a result, a New York income execution must meet two limitations: it may not exceed either 25% of *disposable* earnings or 10% of *gross* income.[1]

Disposable earnings and gross income are defined as follows:

> Disposable earnings are that part of an individual's earnings left after deducting those amounts that are required by law to be withheld (for example, taxes, social security, and unemployment insurance, but not deductions for union dues, insurance plans, etc.).

> Gross income is salary, wages or other income, including any and all overtime earnings, commissions, and income from trusts, before any deductions are made from such income.

N.Y.Civ.Prac.L. & R. 5231(g) (McKinney Supp.1990).

Petitioner's gross income is approximately $600 per week from which 10%, or approximately $60, is deducted weekly under the income execution. Petitioner has not revealed much about his disposable earnings, but he does not suggest that the income execution exceeds 25% of his disposable earnings. There is no dispute, therefore, that the income execution was properly issued under the statute. Petitioner complains that the income execution is a financial burden, threatening his ability to support his family.

New York law provides two remedies for oppressive executions, one general, the other specific. Civil Practice Law and Rules, section 5240 (McKinney 1978) provides:

> The Court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure.

Rule 5231(i) of New York's Civil Practice Law and Rules, specifically tailored to income executions, provides that "[a]t any time, the judgment creditor or the judgment debtor may move ... for an order modifying an income execution." Petitioner invokes both statutes.

## I. MODIFICATION UNDER CPLR 5240

■■■ CPLR 5240 is plainly designed to prevent the brutal use of legal procedures against a judgment debtor. In *Kolortron Systems, Inc., v. Casey*, 118 A.D.2d 687, 500 N.Y.S.2d 36, *appeal dismissed*, 68 N.Y.2d 807, 506 N.Y.S.2d 1037, 498 N.E.2d 437 (1986), the Court emphasized the precise purpose of CPLR 5240 relief, explaining "[i]ts use is strictly to aid a party inequitably burdened by the use of enforcement procedures by his adversary and to

---

**1.** Creditor Midlantic argues that Section 1673 of the Consumer Protection Act does not apply to this debtor. Section 1673 prohibits income executions from exceeding 25% of a debtor's disposable income but, according to Midlantic, section 1603 denies this protection to credit loans made primarily for business or commercial use.

Section 1603, by its own terms, applies only to "[t]his subchapter." *Id.* Section 1603 is in Subchapter I involving financial disclosure, while limitations under section 1673 are in Subchapter II dealing solely with restrictions on garnishments. Subchapter I is separately known as the "Truth in Lending Act" and does not regulate the credit industry. *Tower v. Moss*, 625 F.2d 1161, 1165 (5th Cir.1980). Moreover, section 1673 of subchapter II lists specific exceptions to the 25% garnishment rule and does not mention business or commercial loans. It is well settled that these specific exceptions are to be strictly construed. *In Re Cedor*, 337 F.Supp. 1103 (N.D. Cal.1972).

Lastly, New York independently places a 25% cap protecting a debtor's disposable income with no exception for business loans. N.Y.Civ. Prac.L. & R. 5231(b)(iii) (McKinney Supp.1990).

allow him an opportunity to either meet his legal obligation or postpone the enforcement of a judgment until such time that its enforcement is more properly sought." *Id.* at 687–688, 500 N.Y.S.2d at 36.

The sale of the debtor's home by a sheriff, for example, may well be considered an overly burdensome legal procedure. *Seyfarth v. Bi–County Electric Corp.*, 73 Misc.2d 363, 341 N.Y.S.2d 533 (1973); *Wandschneider v. Bekeny*, 75 Misc.2d 32, 346 N.Y.S.2d 925 (1973). However, only the gravest circumstances warrant CPLR 5240 equitable modification in the face of a valid judgment. In *Seyfarth* the Court found that a mother and child need not become public welfare recipients to receive CPLR 5240 relief where the father's creditor sought to sell the father's interest in the family home. That procedure reeked of Dickensian squalor because of the immediate and unavoidable consequences to the innocent mother and child, although the procedure would have been appropriate if only the debtor faced eviction. 73 Misc.2d at 365–66, 341 N.Y.S.2d at 535.

By contrast, even in the face of harsh consequences to a minor grandchild residing with the debtor, the forced sale of a home was found appropriate where the underlying judgment was for the substantial sum of $117,531.45 and was incurred personally by the debtor. *F.D.I.C. v. Lapadula*, 137 Misc.2d 559, 521 N.Y.S.2d 391 (1987). While these cases deal with the sale of property in satisfaction of a judgment, such applications of CPLR 5240 are instructive and equally applicable to income executions. *Cook v. H.R.H. Construction Corp.*, 32 A.D.2d 806, 302 N.Y.S.2d 364 (1969).

A legitimate 10% income execution resulting in a weekly collection of $60 to cover a $28,000 debt cannot be said to be overly burdensome. Far from oppressive, the execution procedure strikes a fair balance between the needs of a creditor holding a valid money judgment and the needs of a debtor managing competing financial obligations.

## II. MODIFICATION UNDER CPLR 5231

■ Petitioner also moves to modify the execution pursuant to CPLR 5231(i). Once again, case law provides the best insight into when modification of an otherwise valid income execution is appropriate.

The 10% required payment under an income execution may properly be scaled down by court order when such weekly payment is "unduly burdensome." *First Westchester Nat'l Bank of New Rochelle v. Lewis*, 42 Misc.2d 1007, 249 N.Y.S.2d 537 (1964). In *County Trust Co. v. Berg*, 65 Misc.2d 533, 318 N.Y.S.2d 154 (1971), a New York court interpreting CPLR 5231 concluded that "[subdivision (i)] permits the Court, in the interest of justice, and in its discretion, to reduce an income execution where there would be extreme hardship, taking into consideration the debtor's requirements, his dependents, take-home pay and other relevant factors." *Id.* at 535, 318 N.Y.S.2d at 156. Other courts have deemed a modification proper when a 10% income deduction in a debtor's salary is "onerous," *Royal Business Funds Corp. v. Rooster Plastics, Inc.*, 53 Misc.2d 181, 278 N.Y.S.2d 350 (1967), or when it is "impossible" to make payments without taking food out of the mouths of the debtor's children, *Carpenter v. Delage*, 49 N.Y.S.2d 702 (1944).

Clumsy attempts to imbue CPLR 5231 with a workable standard for modification only confirm that each case turns on its specific facts. It is clear however, that modification comes, if at all, only to a debtor showing substantial hardship and an unfair burden in meeting obligations.

Turning to the facts of this case, a reduction in petitioner's income execution from 10% to 5%, or approximately $30 a week, is more than appropriate (with the understanding that any improvement in petitioner's financial status may well warrant an increase in weekly garnishment). Monitoring any such change poses no problem because a creditor may also move for an order modifying an income execution. N.Y.Civ.Prac.L. & R. 5231(i) (McKinney Supp.1990). Viewing the totality of the circumstances, the Court is persuaded that

petitioner's debt obligations amount to an extreme hardship. *See supra Berg.*

### III. DEFAULT

 Petitioner has warned that if no modification is forthcoming, he will be forced to default on his family obligations. That, according to petitioner, will pressure his wife into obtaining a first-priority matrimonial income execution, effectively preempting the commercial creditor in this action from collecting anything at all. The Court is unpersuaded by this threat,[2] except to the extent it underscores petitioner's immediate hardships.[3]

 The Court reminds creditor, Midlantic, that it is not powerless to collect on its judgment. Article 52 of New York's Civil Practice Law and Rules provides an arsenal of weapons for the enforcement of money judgments. Limitations on the garnishment of wages do not immunize other assets. *Long Island Trust Co. v. United States Postal Service,* 647 F.2d 336, 342 (2d Cir.1981).

### CONCLUSION

The income execution shall be modified so that it is limited to 5% of petitioner's weekly gross income, amounting to approximately $30 a week.

SO ORDERED.

---

2. Under New York law, where a debtor-spouse is in default of family support payments, the creditor-spouse may obtain an income execution. N.Y.Civ.Prac.L. & R. 5241, 5242 (McKinney Supp.1990). New York law explicitly provides that support order garnishments have first priority and supersede commercial garnishments filed first in time. *Id.* at 5241(h), 5242(c); *Dawson v. Krolikowski,* 140 Misc.2d 343, 530 N.Y.S.2d 931 (1988); *Bigness v. Obit,* 112 Misc.2d 1078, 448 N.Y.S.2d 120 (1982); *General Motors Acceptance Corp. v. Metropolitan Opera Assoc., Inc.,* 98 Misc.2d 307, 413 N.Y.S.2d 818 (1978).

As discussed, federal law prohibits income executions to exceed 25% of a debtor's disposable income. 15 U.S.C. § 1673(a)(1). There is an exception involving income executions for family support payments, which may garnish as much as 65% of a debtor's disposable income. *Id.* at § 1673(b). New York State law accords. N.Y.Civ.Prac.L. & R. 5241(g) (McKinney Supp. 1990).

Income executions for family support, therefore, will have the effect of barring any other income execution when the family support execution exceeds 25% of a debtor's disposable income:

Thus we hold that where … support garnishments have priority and result in the withholding of 25% or more of employee's disposable earnings, creditor garnishment is impermissible …

*Long Island Trust Co.,* 647 F.2d at 341; *see General Motors Acceptance Corp.,* 98 Misc.2d at 308, 413 N.Y.S.2d at 820 (income execution allowed only to the extent that support order does not absorb 25% of debtor's disposable earnings); *Bigness,* 112 Misc.2d at 1080, 448 N.Y.S.2d at 122. *See also* N.Y.Civ.Prac.L. & R. 5231(b)(iii) (McKinney Supp.1990) ("if the earnings of the judgment debtor are also subject to deductions for alimony, support maintenance … the amount withheld pursuant to this section shall not exceed the amount by which twenty-five percent of the disposable earnings of the judgment debtor for that week exceed the amount deducted [for maintenance and support].").

3. Federal law prohibits retaliation or discrimination by employers against employees with income executions. 15 U.S.C. § 1674. However, garnishment related dismissals persist. *Ellis v. Glover & Gardner Construction Co.,* 562 F.Supp. 1054 (M.D.Tenn.1983).

Petitioner faces the potential hardship of a second default, resulting in a second income execution on his employment record.