In re Bernard PERSKY and Stuart Persky, Debtors.

COMMUNITY NATIONAL BANK AND TRUST COMPANY OF NEW YORK, Plaintiff–Appellant.

v.

Stuart PERSKY and Ronnie Persky, Defendants–Appellees.

No. 45, Docket 89–5011.

United States Court of Appeals, Second Circuit.

Argued Sept. 14, 1989.

Decided Dec. 22, 1989.

Paul Hollender, Staten Island, N.Y. (Corash & Hollender, Staten Island, N.Y., of counsel), for plaintiff-appellant.

Harvey L. Woll, New York City (Howard D. Bader, Mannarino Bader Bloom Fischer & Woll, New York City, of counsel), for defendants-appellees.

Before KAUFMAN, CARDAMONE and FRIEDMAN * Circuit Judges.

CARDAMONE, Circuit Judge:

It had been a settled expectation that when a husband or wife filed for bankruptcy the marital home they owned as tenants by the entirety would not be sold in the administration of the estate. This calm confidence vanished with the enactment of the Bankruptcy Reform Act of 1978, P.L. 95–598, 11 U.S.C. §§ 101 et seq., (Bankruptcy Code or Code). With consumer credit a major industry, and a way of life for most Americans resulting in increased bankruptcy filings, Congress aimed to increase relief for consumer debtors. At the same time, it sought to enhance the returns to creditors, who sometimes observe a debtor obtain a discharge while retaining an interest in marital property worth several hundred thousand dollars. One of the ways these Congressional purposes are accomplished—and the focus of this appeal—is permitting a trustee to realize fully on a debtor's interest in property owned as a tenant by the entirety by granting the trustee the authority to sell it without the consent of the non-debtor spouse. See 11 U.S.C. § 363(h) (1988).

We have before us a March 9, 1989 judgment of the United States District Court for the Eastern District of New York, *Community Nat'l Bank and Trust Co. of New York v. Persky,* 108 B.R. 418 (E.D.N.Y.1989) (Glasser, J.), which affirmed a September 2, 1987 decision and order of the Bankruptcy Court, *In re Persky,* 78 B.R. 657 (Bkrtcy.E.D.N.Y.1987) (Holland, B.J.). The bankruptcy court denied a creditor's application for an order directing the sale of properties, pursuant to 11 U.S.C. § 363(h), owned by two debtors and their non-debtor spouses as tenants by the entirety.

## PRIOR PROCEEDINGS

In each of the jointly administered bankruptcy cases on appeal the debtor and his non-debtor wife own property which is the couple's marital residence, on Staten Island, New York, as tenants by the entirety. Community National Bank and Trust Company of New York (appellant or Bank) is listed by both debtors as an unsecured creditor on a joint debt for the amount of $119,285.

Debtor Stuart Persky filed a voluntary petition under Chapter 7 of the Bankruptcy Code on August 2, 1985; debtor Bernard Persky filed for similar relief on September 11, 1985. As of January 31, 1987 each of their Staten Island properties had a market value of $129,000. The principal amount of Stuart Persky's mortgage is $42,500 and his equity, net of his $10,000 exemption, is $33,250. Bernard Persky's mortgage is $31,550 and his equity, net his exemption, is $38,725. Both owe the Bank more than the value of the equities they have in their residences. Neither of the debtors' spouses has filed a bankruptcy petition, and neither is obligated in the debt owed the Bank.

---

* Hon. Daniel M. Friedman, United States Circuit Judge for the Federal Circuit, sitting by designation.

The trustee of these separate estates has noticed a trustee's sale of Stuart Persky's and Bernard Persky's interests in their marital residences for $4,500 and $2,500 respectively. These amounts reflect the market value only of the debtors' survivorship interests in the tenancies by the entirety. The Bank thereupon sought authorization in an adversary proceeding in the bankruptcy court—pursuant to 11 U.S.C. § 363(h) and over the objections of the non-debtor wives—to sell the entire properties, including the interests of both spouses in each of the estates. Both parties concede that the sale solely of the debtors' survivorship interests in the subject properties, as proposed by the bankruptcy trustee, would realize significantly less funds for the bankrupt estates than would a sale of the entire properties free of the interests of the non-debtor spouses.

The parties stipulated all the relevant facts and, since no trial was held, no other facts were found by the bankruptcy court. Instead, that court dismissed the Bank's complaints, *sua sponte*, as a matter of law. 78 B.R. 657, 667. It ruled that a debtor's present possessory interest, as a tenant by the entirety, is exempt from process under New York law. Hence, it concluded that the Bankruptcy Code § 363(h) could not be employed to satisfy appellant's request for a sale of the tenancies by the entirety. *Id.* at 664. On appeal, the district court affirmed the bankruptcy court's order and adopted that court's opinion in whole. From the district court's affirmance, the Bank appeals.

## DISCUSSION

Because 11 U.S.C. § 363(h) of the Bankruptcy Code is the statute that lies at the heart of this appeal, we commence discussion by setting it forth in full:

> Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) and (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
>
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interest of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

Four issues are raised on appeal: (1) whether a creditor has "standing" to challenge a trustee's decision not to proceed with a § 363(h) sale; (2) whether an owner's interest in his or her home is exempt from process under 11 U.S.C. § 522(b)(2)(B); (3) whether, if not exempt, a sale of the family residences is prohibited under the terms of § 363(h); and (4) whether, if sale of the property interests is not exempt under § 522(b)(2)(B) and not barred by the terms of § 363(h), § 363(h) unconstitutionally permits the taking of a non-debtor's property interests in violation of the Fifth Amendment. We turn to the first issue.

### 1. *Standing.*

■ The Perskys argued before the bankruptcy court that the trustee could not be compelled to sell their property under § 363(h) because the statute provides only that "the trustee *may* sell both the estate's interest ... [and a co-owner's interest] in property in which the debtor had ... an undivided interest as ... tenant by the entirety." 11 U.S.C. § 363(h) (emphasis supplied). This "may sell" language, debtors contend, imparts discretion to the trustee. The bankruptcy court, having determined that the marital properties were beyond the reach of § 363(h) under an exemption created by the law of New York, did not address whether the Bank as a creditor

had standing to compel the trustee to proceed with a § 363(h) sale. 78 B.R. at 667. This standing argument is raised again on appeal.

The trustee is required to liquidate a debtor's assets in a manner that will be most beneficial to the creditors. *See* 11 U.S.C. § 704(1). A number of cases stress that an interested creditor has standing to sue to require compliance with the Bankruptcy Code when the trustee has refused to act to protect creditors' interests. *See, e.g., In re McKeesport Steel Castings Co.,* 799 F.2d 91, 93 (3rd Cir.1986) (other parties may bring action under provision stating only trustee may act); *In re Morrison,* 69 B.R. 586, 589 (Bkrtcy.E.D.Pa.1987) (where trustee either refuses or has no reason to act, creditors may act in lieu of trustee). Appellees concede that a court can make the trustee's decision for it when "there is a blatant abuse of [its] discretion." Thus, a bankruptcy trustee's discretion is not unlimited and unreviewable.

It follows that the discretion granted a trustee by § 363(h) is reviewable by the bankruptcy court. The fact that the statute contains a provision allowing the trustee to balance the detriment to a non-debtor co-owner against the benefit to the estate, 11 U.S.C. § 363(h)(3), suggests that the trustee's discretion (implied by the word "may") is directed toward that specific balancing test. Because a trustee is always subject to the supervision of the bankruptcy court, it may not chart a course of action or inaction that the court finds inimical to the best interests of the creditors. Consequently, the Bank has standing to compel a § 363(h) sale of the subject properties.

2. *Exemption of Debtors' Property Interests.*

■ Next we consider whether debtors' homes are exempt from a § 363(h) sale by application of § 522(b)(2)(B). The latter provision permits a debtor to exempt

> any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant

by the entirety or joint tenant is *exempt from process* under applicable nonbankruptcy law.

11 U.S.C. § 522(b)(2)(B) (emphasis added). Bankruptcy Judge Holland ruled that § 522(b)(2)(B) applied and that it exempted the Perskys' homes from the bankrupt estates. Judge Holland reasoned that New York's CPLR 5240 was the "applicable nonbankruptcy law" that made these residences "exempt from process." We disagree.

CPLR 5240 permits a court on motion to "make an order denying limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure." N.Y. CPLR 5240 (McKinney 1978). This provision provides a court with a "practical method to protect judgment debtors from the often harsh results of lawful enforcement procedures," which it may use in order to prevent unreasonable disadvantage or other prejudice through its "broad discretionary power to control and regulate the enforcement of a money judgment." *Guardian Loan Co., Inc. v. Early,* 47 N.Y.2d 515, 519, 419 N.Y.S.2d 56, 392 N.E.2d 1240 (1979). Apropos of the issue under discussion, for example, CPLR 5240 may be used to enjoin the sale of a residence where creditors could readily satisfy their judgment in a less onerous manner. *Id.* at 519, 419 N.Y.S.2d 56, 392 N.E.2d 1240.

In short, CPLR 5240 is a remedial tool which a court *may* use; it creates no substantive exemption for any particular type of property interest. What property is exempt under New York law is defined by CPLR 5205 (personalty) and CPLR 5206 ($10,000 homestead or residential exemption). N.Y. CPLR 5205, 5206 (McKinney 1978). The fact that in individual cases execution against a particular type of property interest may be limited or conditioned by the remedial provisions of CPLR 5240 to prevent disadvantage to certain persons does not as a matter of substantive law transform that particular type of property interest into one generally exempt from the enforcement process. *See, e.g., Kolortron Systems, Inc. v. Casey,* 118 A.D.2d 687,

687–88, 500 N.Y.S.2d 36 (2d Dep't 1986) (CPLR 5240 functions strictly to aid party inequitably burdened by enforcement procedures); *Kaplan v. Supak & Sons Mfg. Co.*, 46 Misc.2d 574, 578, 260 N.Y.S.2d 374, 378 (N.Y.C.Civ.Ct.1965) ("CPLR 5240 permits a certain amount of tinkering on the structure by the judicial handyman, but it does not permit the construction of an entirely new wing using jurisprudential architecture."). Hence, inasmuch as the debtors' interests are not exempt from process under CPLR 5240, or any other nonbankruptcy law, § 522(b)(2)(B) does not exempt those interests from the reach of a § 363(h) sale.

■ We must now determine whether under any other New York law a debtor's tenancy by the entirety is exempt for enforcement purposes. The interests of a tenant by the entirety are a right to the use of an undivided half of the property during the joint lives of a husband and wife and a survivorship right to the entire fee. Each tenant by the entirety is said "to be seized of the whole estate, and [such tenants] do not take by moieties...." *Hiles v. Fisher*, 144 N.Y. 306, 312, 39 N.E. 337 (1895).

In *Hiles*, a husband executed a mortgage on lands deeded to him and his wife. A purchaser at a mortgage foreclosure sale acquired the husband's interest and thus became a tenant in common with the wife, subject only to her right of survivorship. *Id.* See also *Rothschild v. Lincoln Rochester Trust Co.*, 212 F.2d 584, 585 (2d Cir. 1954) (per curiam) (debtor tenant's interest in tenancy by the entirety liable to be taken on execution); *Finnegan v. Humes*, 252 App.Div. 385, 299 N.Y.S. 501 (1937), *aff'd*, 277 N.Y. 682, 14 N.E.2d 389 (1938) (debtor tenant transfers *all* his rights, including right to present possession, in a tenancy by the entirety to third party upon execution sale to third party). Although a debtor tenant's interest is alienable, the value of that interest is problematical because if the non-debtor tenant survives the debtor, the non-debtor tenant acquires the entire fee and a purchaser takes nothing. *See In re Tsunis*, 39 B.R. 977, 979 (E.D.N.Y.1983), *aff'd*, 733 F.2d 27 (2d Cir.1984). In light of the recited authorities, it seems plain that the interest of a tenant by the entirety is not exempt from sale and enforcement by execution.

3. *Sale of Subject Properties under § 363(h).*

   a. *Non-debtor Spouse's Interest May Be Sold*

Having concluded that the debtor husbands' interests are not exempt from process under New York law—that is to say, that they are alienable—it must further be determined whether the non-debtor wives' interests may be ordered sold under § 363(h). The sale of the entire interest in the tenancy by the entirety is plainly authorized by the statutory language. The legislative history of the bill (known as H.R. 8200) that later became § 363(h) demonstrates that Congress planned to permit the non-debtor spouse's interest to be sold without consent, but without invalidating such spouse's rights. Congress protected those rights by granting the non-debtor spouse "a right of first refusal at a sale of the property, and by requiring the trustee to pay over to the spouse the value of the spouse's interest in the property" if the trustee sells it to a third party. H.R.Rep. No. 595, 95th Cong., 2d Sess. 177, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6137–38.

■ The legislative history further reveals it was Congress' purpose to bring into the estate anything of value that the debtor owned, exempting from the estate only that property necessary for the debtor to make a fresh start and to support himself and his dependents. *Id.* at 6136. "But on the whole, the trustee will bring all property together for a coherent evaluation of its value and transferability, and then to dispose of it for the benefit of the debtor's creditors." *Id.* at 6136–37. It is clear therefore that the language of the statute and its legislative history permit an order of sale of the non-debtor spouse's interest in the marital residence.

Under the statute, a debtor's and non-debtor co-owner's interest may be sold only if four conditions are satisfied. Here three

of them are concededly satisfied: The first—partition in kind among co-owners—is impracticable; the second—that sale of the debtors' interests alone would realize significantly less for the estates than would a sale free of the interests of the co-owners—has been stipulated; and the fourth—that the property is not used in production or sale of electric energy or natural gas for heat, light or power—is undisputed.

The remaining condition, and the crux of this appeal, is the third requirement: that "the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners...." 11 U.S.C. § 363(h)(3). Thus, the benefit of the sale from the estates' standpoint must outweigh the detriment to the co-owner wives before a § 363(h) sale may take place. Although the bankruptcy court engaged in a balancing test, it did so only after concluding that the husband-debtors' present possessory interests in the marital residences were exempt under CPLR 5240 and § 522(b)(2)(B). Starting from that incorrect premise, it then purported to balance the detriment to the non-debtor wives of being ousted from their homes against the benefit that would accrue to their husbands' estates from the sale of the non-debtor wives' *survivorship* interests in the property. 78 B.R. at 664–65, 667.

b. *Weighing the Detriment of a Sale of the Entire Tenancy By the Entirety*

In this case, the stipulated facts indicate that the values of Stuart and Bernard Perskys' survivorship interests are $4,500 and $2,500 respectively. Stuart Persky's equity in his home is $33,250 and Bernard Persky's is $38,725. Such equity values can only be realized from a sale of the entire interest in the tenancy by the entirety. Because the parties stipulated that there would be a greater return to the bankrupt estate under a § 363(h) sale than under the trustee's proposed debtor's survivorship interest sale, the economic benefit to the estate is established.

■ As noted, the bankruptcy court incorrectly weighed the detriment to the non-debtor wives of being ousted from their homes against the benefit that would accrue to the estate from a sale only of the wives' *survivorship* interests in the property. 78 B.R. at 667. Using the wrong scale resulted in a wrong reading. The test used was incorrect because the scales only included the non-debtor spouse's *survivorship* interest in the property. Benefit to the estate, of course, should be analyzed from the standpoint of a sale of the non-debtor wife's entire interest in the property: her *present possessory* and her *survivorship* interests. There remains to be considered the detriment side of the scale; namely, what sort of evidence respecting detriment may be received. When the bankruptcy court conducted a § 363(h)(3) balancing test it considered non-economic factors in "valuing" the detriment to the non-debtor spouse. The Bank contends that consideration of emotional, psychological, or physical detriment is improper under § 363(h)(3). The Bank insists that in many cases a non-debtor co-owner will not be ousted from the marital property because he can re-purchase it rather easily considering the amount of equity he already has in it.

■ Adopting the Bank's proposition would mean that there is *never* any detriment to a co-owner resulting from a forced sale because §§ 363(i) and (j) provide that the co-owner will receive his share of the equity from the proceeds of the sale, and in addition must be given a right of first refusal once a final bid is made on the property. 11 U.S.C. § 363(i) and (j). This analysis has little rhyme or reason because, if it is correct, Congress' direction in § 363(h) requiring a balancing of detriment and benefit would be meaningless. Since first refusal rights, a co-owner's right to her share of the proceeds, *and* the balancing test are all included in the statute, it is obvious that Congress was acutely concerned with the potential harshness that § 363(h) might create. *See* 1978 U.S.Code Cong. & Admin.News at 6137–38. Hence, it seems evident that in valuing detriment to the co-owner, § 363(h)'s balancing test

should include non-economic factors. We recognize that the statute does not spell this out in so many words, yet it is implicit in the inclusion of the balancing test and is borne out by the legislative history. *See In re McCoy*, 92 B.R. 750, 752 (Bkrtcy.N.D. Ohio 1988); *In re Coombs*, 86 B.R. 314, 318 (Bkrtcy.D.Mass.1988); *In re Spain*, 85 B.R. 874, 878 (Bkrtcy.N.D.Ala.1988); *In re Ray*, 73 B.R. 544, 549 (Bkrtcy.M.D.Ga. 1987).

In weighing detriment to the non-debtor spouses a number of variables must be considered when valuing their survivorship interests as well as their present possessory interests: for example, actuarial calculations of the life expectancies of the spouses, respective contributions to the purchase price of the home, tax exemptions available on the property, prospects for acquiring a new home, special physical or mental handicaps, and minor children living at home. *Cf. United States v. Rodgers*, 461 U.S. 677, 704–05, 103 S.Ct. 2132, 2148–49, 76 L.Ed.2d 236 (1983). In another statutory setting the Supreme Court summed up the dilemma the present statute poses stating that "we are not blind to the fact that in practical terms financial compensation may not always be a completely adequate substitute for a roof over one's head." *Rodgers*, 461 U.S. at 703–04, 103 S.Ct. at 2148.

■ Consequently, we hold that other factors—beyond the economic harm that accounts for the value of a present possessory interest—are to be included in the balancing test that weighs the detriment of the sale of a non-debtor spouse's interest in the marital home. Yet, absent a trial the record is lacking in proof regarding detriment. Therefore a remand is required for the bankruptcy court to determine and consider the detriment to the non-debtor spouses.

4. *Constitutionality of a Sale of Non-debtor's Interest under § 363(h).*

In light of the fact that we are remanding this case for the trial court to determine whether or not there should be a sale of the non-debtor's interests under § 363(h), it is unnecessary to reach or de-

cide whether such a sale under the statute constitutes an unconstitutional taking. Absent an order directing a § 363(h) sale, the expression of our views would be merely advisory.

### CONCLUSION

The order appealed from is accordingly reversed, and the matter is remanded to the Bankruptcy Court for further proceedings consistent with this opinion.