**In re JoAnn MORRIS, a/k/a JoAnn Paris, a/k/a JoAnn Paressidi, Debtor.**

**Bankruptcy No. 189–92116–260.**

United States Bankruptcy Court, E.D. New York.

July 10, 1990.

preventing motions by parties-in-interest from being decided on their merits.").

Robert Devine, Hollis, N.Y., pro se.

Finkel, Goldstein, Berzow & Rosenbloom by Kevin Nash, New York City, for debtor.

## DECISION AND ORDER

CONRAD B. DUBERSTEIN, Chief Judge.

The above captioned case was instituted by the filing of an involuntary Chapter 7 petition by Robert Devine ("Devine" or "petitioner"), the sole petitioner. Devine claims to be a creditor by reason of a default judgment from the New York State Supreme Court in the amount of $20,050, of which $13,050 remains unpaid, together with accrued interest.

JoAnn Morris ("Morris" or "the Debtor"), the debtor herein, is a real estate broker licensed by the State of New York. Devine had been her attorney for several years prior to this filing. Morris denies being indebted for the above amount which was created by the Debtor's alleged purchase of a real estate agency from the petitioner. The parties are in dispute as to whether Morris ever purchased the business. She claims she was not the purchaser, but instead, the broker for the sale of the real estate agency to a third party. From this sale Morris claims commissions due and owing. She also denies knowingly signing a confession of judgment upon which the judgment is based, as well as appearing before the notary public named thereon. Furthermore, Morris claims that any papers she signed pertaining to the purchase of the agency were not reviewed and were executed blindly on the advice of Devine acting as her attorney. The facts underlying this transaction are sketchy at best but will be shown to be irrelevant for purposes of this decision.

The involuntary petition under Chapter 7 was filed on June 28, 1989 and the order of relief was granted on July 26, 1989. The involuntary petition asserts that the petitioner's claim is in excess of $5,000. However, it does not allege that the debtor is not generally paying her debts as they become due, nor that there are less than 12 creditors.

Shortly after the entry of the order of relief, on July 28, 1989 Morris interposed an answer to the involuntary petition. On August 4, 1989, she filed a motion seeking to vacate the order for relief and to dismiss

the petition on the ground that it was filed in bad faith due to the fact that she was never indebted to the petitioner and that she was being harassed by the petitioner.

Subsequent to this motion to dismiss, the debtor retained the law firm of Finkel, Goldstein, Berzow & Rosenbloom who thereafter, on October 6, 1989, filed the amended motion presently before this Court. The amended motion seeks an order pursuant to Federal Rule of Civil Procedure 60 and Bankruptcy Rule 9024 vacating the order for relief and dismissing the involuntary petition filed by the petitioner on the grounds that the petition is legally insufficient and the petitioning creditor lacks standing to commence a bankruptcy case. The motion points out that Devine has not made any allegation to show the confession of judgment represents an unsecured obligation or that the debtor is not generally paying her debts as they become due.

The debtor argues that because she filed her answer within 20 days after service of the summons in compliance with Bankruptcy Rule 1011(b), the Order for Relief was presented for signature prematurely. She asserts that because her answer was filed prior to the conclusion of the 20 day period, a trial should have been held before the entry of such an order. There is some dispute as to the actual date of service and, as a result, the date on which the 20 day period commenced. The essence of this dispute is that the debtor contends that service of the summons was not performed until July 12, 1989 when it was mailed to her. However, an Affidavit of Service submitted to the court indicates that in addition to the July 12, 1989 mailing, a copy of the petition was personally served on the debtor's 15 year old son, Cortney, on July 8, 1989.

In addition, the debtor alleges that since the service by mail was effected on July 12, 1989, the summons which was issued by the Clerk of the Court on June 28, 1989 was stale according to Bankruptcy Rules 1010 and 7004(f) which provide that service must be made within 10 days following the issuance of the summons.

## DISCUSSION

Involuntary petitions in bankruptcy are governed by § 303 of the Bankruptcy Code. Pursuant thereto, such cases can be commenced under Chapter 7 or Chapter 11 against any entity which may be a debtor under the chapter in which such case is commenced. An involuntary case may be commenced by three or more entities that hold claims against the debtor which are not contingent as to liability and aggregate at least $5,000 more than the value of any lien securing their claims. 11 U.S.C. § 303(b)(1). Where the debtor has less than twelve creditors excluding employees, insiders, and transferees of voidable transfers, the petition may be filed by a single creditor. This single creditor must also meet the $5,000 requirement.

In response to the petition, the debtor may answer, move to dismiss, or counter with its own voluntary petition. In the event the debtor interposes an answer, a trial of the issues will result. At trial, the court shall order relief against the debtor only if the debtor is found not to be paying its undisputed debts as they become due, or a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession within 120 days before the filing of the petition.

## ORDER OF RELIEF

■ As stated above, an affidavit of service filed by the petitioner reflects that the summons and petition was personally served on a representative of the debtor on July 8, 1990. Bankruptcy Rule 1011(b) provides that defenses and objections to an involuntary petition must be filed and served within 20 days after service of the summons. This Court takes judicial notice of the fact that an answer was filed in the Clerks' Office on July 28, 1989, within the prescribed period.

■ Due to an apparent administrative error, an Order for Relief under Chapter 7 was entered by the undersigned on July 26,

1989, two days prior to the expiration of the debtor's time to answer. Rule 60(a) of the Federal Rules of Civil Procedure, adopted in Bankruptcy Rule 9024, states in pertinent part:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission, may be corrected by the court at any time of its initiative or on the motion of any party...

Accordingly, the Order for Relief signed on July 26, 1989 must be vacated. A trial of the issues will be scheduled for the purpose of determining whether the debtor is not generally paying her debts as they become due as required to maintain a petition under § 303. In noting that the debtor has raised a threshold issue that Devine does not qualify as a petitioning creditor, in light of the foregoing and the fact that the petitioner appears *pro se*, the court provides the following guidance to be considered during the trial.

## QUALIFICATION OF PETITIONING CREDITOR

In his petition, Devine alleges that he holds a claim against the debtor, "not contingent as to liability and not subject to a bonafide dispute, amounting in the aggregate, in excess of the value of $5,000." He describes the nature of his claim as the $13,050 unpaid portion of a $20,050 state court judgment. In her answer, Morris attacks the judgment as being obtained through fraud and forgery. From the outset, this Court holds that any arguments of this nature are under the exclusive domain of the state court and the judgment will be recognized in this Court unless vacated in its court of origin even when the state court judgment is entered upon default. *In re Muir*, 107 B.R. 13 (Bankr.E.D.N.Y. 1989); *In re Farrell*, 27 B.R. 241 (Bankr.E. D.N.Y.1982).

Papers show that the judgment was filed with the Clerk of the Court, County of Queens, in which the debtor's property is located, thereby giving Devine the status of secured judicial lien creditor. A "judicial lien" is defined as a "lien obtained by judgment, levy, sequestration or other legal or equitable process or proceeding". 11 U.S.C. § 101(32). If a lien creditor fails to explicitly waive its secured status and the debtor was the owner of real property in the county at the time that the lien was filed, the creditor must be considered a secured creditor under the Bankruptcy Code. *In re Asplund*, 21 B.R. 139 (Bankr.W.D.Wis.1982); *Melita v. State Bank of Albany*, 124 A.D.2d 282, 508 N.Y. S.2d 274 (Third Dept.1986), *appeal denied*, 69 N.Y.2d 605, 505 N.E.2d 953, 513 N.Y. S.2d 1025 (1987). In fact, where a creditor has recited the amount of a debt and the entry of a judgment thereon it has been held conclusively that the creditor has not surrendered its lien. *Melita*, 508 N.Y.S.2d at 275. In the instant case, the petitioner concedes on the record that he recorded his judgment with the Clerk of Queens County. Additionally, copies of the judgment submitted in court papers clearly show that it has been docketed with the Clerk.

Section 506(a) of the Bankruptcy Code provides that a judicial lien is secured only to the extent of the value of the debtor's interest in such property after deducting all prior encumbrances, with the remainder of the debt being deemed an unsecured claim. *Asplund*, 21 B.R. at 141. Since Devine is clearly a secured creditor, in order to qualify as a petitioner he must be undersecured to the extent that the $13,050 judgment must exceed the value of the debtor's interest in the home by more than $5,000. The difficulty lies in how the debtor's interest should be calculated.

The property in question consists of the debtor's primary residence which is held by the debtor and her husband as tenants by the entirety. During a hearing before this Court the petitioner admitted that his sole purpose in filing the involuntary petition in bankruptcy was to avail himself of § 363(h) of the Bankruptcy Code which allows a partition sale of property held as tenants in the entirety under certain limited circumstances to satisfy the claims of creditors where only one of the spouses files for bankruptcy. Under New York law this remedy is not available to a creditor hold-

ing a claim against only one of the co-owners.

■ An overview of New York law in this area is warranted for comparison with the remedies available under the Bankruptcy Code. While the interest of a tenant by the entirety is subject to a lien stemming from a judgment and may be sold upon a levy of execution under New York law, the practicalities of such action are dubious. A creditor cannot force a partition of the property and any purchaser of the debtor's interest becomes a tenant in common with the other tenant by the entirety, subject to the latter's right of survivorship. *Finnegan v. Humes*, 163 Misc. 840, 298 N.Y.S. 50 (Sup.Ct.), *modified*, 252 A.D. 385, 299 N.Y.S. 501 (4th Dept.1937), *aff'd*, 277 N.Y. 682, 14 N.E.2d 389 (1938); Warren's Weed New York Real Property "Tenancy By Entirety" § 4.03 (4th ed.1990). The purchaser steps into the shoes of the tenant whose interest was purchased and is limited to the right to share rents and profits as well as use and occupancy until the tenancy by the entirety is terminated by death, divorce, or in some other way. Moreover, section 5240 of the Civil Procedure law and Rules gives the court the discretionary power to prohibit such sales and executions in the interest of justice and fairness. *Seyfarth v. Bi-County Electric Corp.*, 73 Misc.2d 363, 341 N.Y.S.2d 533 (Sup.Ct.1973); *Gilchrist v. Commercial Credit Corp.*, 66 Misc.2d 791, 322 N.Y.S.2d 200 (Sup.Ct.1971); *But see Federal Deposit Insurance Co. v. Lapadula*, 137 Misc.2d 559, 521 N.Y.S.2d 391 (Sup.Ct.1987).

The bankruptcy laws allow, on the other hand, in certain instances, the sale of both spouses' interests in tenancy by the entirety property even though the non-debtor spouse is not responsible for the other's indebtedness. Section 363(h) of the Bankruptcy Code was added in response to situations where a non-debtor spouse would offer insignificant amounts for the debtor's interest in joint property recognizing that the property could not be touched under applicable non-bankruptcy laws. This section provides:

Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweights the detriment, if any, to such co-owners, and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

The Second Circuit in *In re Persky*, 893 F.2d 15 (2d Cir.1989), found that in order for the bankruptcy court to balance the benefit to the estate against the detriment of a sale of the entire property to a co-owner, the court must analyze all factors including actuarial calculations of the life expectancies of the spouses, respective contributions to the purchase price of the homes, tax exemptions available on the property, as well as such non-economic harm as prospects for acquiring a new home, special physical and mental handicaps and minor children living at home, and other harm caused by emotional, psychological and physical factors. *Persky*, 893 F.2d at 21. As a practical matter this section is usually invoked to sell primary residences where there is enough equity in the property to satisfy secured creditors, pay the non-debtor spouse for his or her interest in the property, pay the debtor's household exemption, and make a meaningful contribution to the unsecured creditors, with enough left over for the debtor and non-debtor spouse to secure alternative living quarters. Section 363(h) has also been

used to sell vacation homes where the test of detriment of the sale will be less stringent.

Many courts have held that where a creditor holds a judgment against a debtor's spouse, one-half the equity in the entireties property after exemptions, should be allocated to the debtor for purposes of calculating the debtor's equity remaining to which a lien may attach. *In re Dionne*, 40 B.R. 137 (Bankr.D.R.I.1984); *In re Jordan*, 5 B.R. 59 (Bankr.D.N.J.1980). It should be noted that these decisions were reached in the context of applications to avoid judicial liens to the extent that they impaired a debtor's section 522 exemptions. Since the petitioner's sole intent for filing the instant petition is to cause a sale of the debtor's house, this Court will value the petitioner's secured interest based upon how much he would receive in a 363(h) sale.

Regardless of how the interest is valued, it appears that the petitioner finds himself in a "catch–22". If he claims the property should be sold under § 363(h) because of a substantial amount of equity that would flow to the estate, he would also be arguing in essence that his claim is sufficiently secured, therefore rendering him unqualified as a petitioning creditor. On the other hand, if he argues that the debtor holds a small amount of equity in the property and he is unsecured to the extent of at least $5,000, he could not avoid the argument that the property should not be sold under § 363(h). By his own statements, no other property exists which could satisfy his judgment.

### TRIAL OF THE ISSUES

If Devine is found to qualify as a petitioning creditor, and the debtor is found to have fewer than twelve creditors, this Court will hear testimony as to whether the Debtor is generally paying her debts as they come due. If it is found that she is paying these debts in the ordinary course, the involuntary petition will be dismissed.

■ Notwithstanding that this Court is prepared to go forward with a trial of the issues so as to give both parties their day in court, the petitioner must bear in mind that filing an involuntary petition "should not be lightly undertaken." *In re Advance Press and Litho, Inc.*, 46 B.R. 700, 702 (D.Colo.1984). *See also In re Exchange Network Corp.*, 85 B.R. 128 (Bankr.D. Colo.), *aff'd*, 92 B.R. 479 (D.Colo.1988). "It usually chills the alleged debtor's credit ... [and] leaves a permanent scar, even if promptly dismissed." *In re SBA Factors of Miami, Inc.*, 13 B.R. 99, 101 (Bankr.S.D. Fla.1981). Along with a loss of credit standing there are other grave consequences to the debtor including the inability to transfer assets and carry on business affairs, as well as public embarassment. *In re Reid*, 773 F.2d 945, 946 (7th Cir.1985); *In re Cates*, 62 B.R. 179 (Bankr.S.D.Tex. 1986). Accordingly, a creditor who files an involuntary petition has an affirmative duty to reasonably investigate the totality of the circumstances surrounding a debtor's finances. The creditor must ascertain how many other creditors exist. It must also determine whether the filing of a bankruptcy petition would indeed help the creditor to collect its debt and prevent the diminution of the estate through the attachment of the debtor's assets by third parties, thereby complying with the purposes underlying section 303 of the Bankruptcy Code. In the instant case, it is doubtful whether any such analysis was made.

■ The Bankruptcy Court was not designed to be "a forum for the trial and collection of an isolated disputed claim" by a single creditor. *In re Nordbrock*, 772 F.2d 397 (8th Cir.1985). *See also In re Goldsmith*, 30 B.R. 956, 963 (Bankr.E.D.N. Y.1983); *In re R.N. Salem Corp.*, 29 B.R. 424, 429 (Bankr.S.D.Ohio 1983); *In re SBA Factors of Miami, Inc.*, 13 B.R. at 100–01; *In re Nar–Jor Enterprises Corp.*, 6 B.R. 584, 596 (Bankr.S.D.Fla.1980). There is no special need for bankruptcy relief where a creditor can go to state court to seek collection of a debt. *Nordbrock*, 772 F.2d at 400; *In re Central Hobron Ass'n*, 41 B.R. 444, 448–49 (Bankr.D.Hawaii 1984); *In re Arker*, 6 B.R. 632, 636 (Bankr.E.D.N.Y.1980). The court questions the petitioner's motives in filing this involuntary petition.

Based on the foregoing, it is

ORDERED, that the Order of Relief signed on July 26, 1989 is hereby vacated, and it is further

ORDERED, that a trial of the issues is scheduled for August 21, 1990 or as soon after as the parties may agree.